CALABRESI, J., concurring:

I join the majority opinion in its description of the facts and history of this case, and in its discussion in Part I, which deals with the National Stolen Property Act ("NSPA"). I also join Part II, which considers the Economic Espionage Act ("EEA"), but as to that act I wish to add a few thoughts.

I agree with the majority that the text of the EEA is such that it would require stretching to cover Aleynikov's acts. But texts must always be read in context, and context includes not only the whole of the statute (well addressed by the majority), but also the "mischief" the law was enacted to address. This is not the same as legislative history. It is significant that when English courts were not allowed to look at Hansard (the account of the laws' passage through Parliament), they nevertheless could, and frequently did, consider the circumstances because of which a law was introduced and passed. That is, they considered the situational context and mischief. *See Gorris v. Scott*, (1874) 9 L.R. Exch. 125 (Eng.) (refusing to apply an order of the Privy Council to a mischief different from that which prompted the issuance of the order); *see generally Heydon's Case*, (1584) 76 Eng. Rep. 637 (Exch.) 638; 3 Co. Rep. 7a, 7b ("[T]he office

of all the Judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief . . . .").

The EEA was passed after the Supreme Court and the Tenth Circuit said the NSPA did not cover intellectual property. *See Dowling v. United States*, 473 U.S. 207, 226 (1985); *United States v. Brown*, 925 F.2d 1301, 1307-08 (10th Cir. 1991). While the legislative history can be read to create some ambiguity as to how broad a reach the EEA was designed to have, it is hard for me to conclude that Congress, in this law, actually meant to exempt the kind of behavior in which Aleynikov engaged. *See* H.R. Rep. No. 104-788, at 6 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4021, 4024-25 (citing *Brown*). I am not dissenting because I recognize the strength of the majority's analysis of the text and the legislative history, and because, as the majority says, ambiguous criminal statutes must be read in favor of the defendant. Nevertheless, while concurring, I wish to express the hope that Congress will return to the issue and state, in appropriate language, what I believe they meant to make criminal in the EEA.